Gerald L. NAEKEL, Petitioner,

v.

**DEPARTMENT OF TRANSPORTA-
TION, FEDERAL AVIATION
ADMINISTRATION, Respondent.**

No. 87–3274.

United States Court of Appeals,
Federal Circuit.

June 28, 1988.

Victoria Marie Bunsen, Hayes & Phillips, P.C., Denver, Colo., argued for petitioner. With her on the brief was Paul Godec.

Hillary A. Stern, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With her on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Robert A. Reutershan, Asst. Director.

Before SMITH, NEWMAN and BISSELL, Circuit Judges.

PER CURIAM.

Petitioner Gerald L. Naekel, through counsel, appeals the decision of the Merit Systems Protection Board ("the board"), *Naekel v. Department of Transportation,* 32 M.S.P.R. 488 (1987), denying in part his Petition for Enforcement. The circumstances of Mr. Naekel's separation from his employment with the Federal Aviation Administration are set forth in this court's decision reversing that action, *Naekel v. Department of Transportation,* 782 F.2d 975 (Fed.Cir.1986). This appeal relates to certain aspects of Mr. Naekel's reinstatement that were decided adversely to him in the board's Opinion and Order dated March 5, 1987.

### A. Grade and Level

We affirm the board's decision that Mr. Naekel was entitled to back pay at GS–9, but not at GS–11, GS–12, and GS–13 respectively for each consecutive year that he would have been employed but for his improper removal. Naekel neither demonstrated that any statute, regulation or collective bargaining agreement mandated his promotion to these levels during the interim period, nor presented facts that would establish a clear entitlement to retroactive promotions. *Boese v. Department of the Air Force,* 784 F.2d 388, 390 (Fed.Cir.1986).

A government employee may not receive the benefits of a position until he is appointed to it. *United States v. Testan,* 424 U.S. 392, 402, 96 S.Ct. 948, 955, 47 L.Ed.2d 114 (1976). Accordingly, for an employee to meet his heavy burden of establishing a clear entitlement to retroactive promotion and the resulting back pay, he must demonstrate a *reduction* in his duly *appointed* or *authorized* position caused by the adverse personnel action. *See National Treasury Employees Union v. Horner,* 654 F.Supp. 1159, 1167 (D.D.C.1987).

A retroactive promotion and back pay are appropriate for a duly *appointed* position if the appropriate authorizing official approved the promotion, but due to a clerical error, the effective date was delayed. Conversely, retroactive promotion and back pay are inappropriate if the clerical error delays the approval of the promotion by the appropriate authorizing official. A retroactive promotion and back pay are appropriate for a duly *authorized* posi-

tion if a mandatory personnel policy established by regulation or collective bargaining agreement required promotion on successful completion of a training phase, the employee successfully completed the program, but the employee was denied promotion due to administrative error. Conversely, promotion and back pay are inappropriate if the employee would have been only one of several qualified candidates for the promotion, but the factual record did not clearly establish that the employee would have been selected for promotion. *See* Federal Personnel Manual (FPM) Supp. 990–2, Book 550, Subch. S8–5 at 550–61 (April 20, 1984).

■ Naekel has not met his burden in this case because his promotion cannot be presumed based on the evidence of record here. At best, to assume he would have been promoted is speculative. *See Power v. United States*, 597 F.2d 258, 261–62 (Ct. Cl.1979), *cert. denied*, 444 U.S. 1044, 100 S.Ct. 731, 62 L.Ed.2d 730 (1980) (possibility or mere probability not sufficient). It is undisputed that, if Naekel had not been removed from his position, he would have had to complete successfully several phases of training in the air traffic controller program in order to be promoted. Naekel did not complete that training. He produced no evidence that he would have successfully done so. There was, moreover, nothing in the record to demonstrate that completion of the training was a mere formality. Further, the record lacks any evidence that Naekel demonstrated an ability to perform the duties of the higher-graded positions to which he seeks retroactive promotion. Indeed, he essentially admits this when he concedes that he "has not demanded reinstatement at the GS–13 level." The Board correctly decided to limit Naekel's entire back pay award to grade GS–9.

## B. Overtime

■ Mr. Naekel challenges the formula by which the overtime component of his back pay was calculated. The agency followed a decision of the Comptroller General that back overtime pay may be based either upon an employee's prior overtime experience or, as applied in Mr. Naekel's case, upon the overtime experience of similarly situated employees who were not removed during the relevant period. *In re Ranieri*, B–207997.2 (Comp.Gen., Aug. 23, 1983). This formula appears to be fair and apt, and was correctly applied at GS–9 for the entire period.

In *Spezzaferro v. Federal Aviation Administration*, 807 F.2d 169, 171 (Fed.Cir. 1986) this court approved a generalized overtime calculation based on the average overtime experience of all grades at that location, in view of the large number of employees being reinstated and other circumstances specific to that location. However, we agree with the government that it is inappropriate to apply an average figure when a more precise calculation is easily made.

## C. Interim Employment

■ Mr. Naekel was employed for twenty months with the Army Reserve. His agreement with the Army Reserve permitted his resignation before the end of his three-year contract, subject to forfeiture of his reimbursed moving expenses. Mr. Naekel asserts, without apparent contradiction, that this is the only reasonable job he could get after over two years of unemployment, although he sent out two hundred job applications. He attributes his difficulties to the government's criminal allegations against him—allegations held by this court to be "patently ridiculous". He refers to his obligation to mitigate damages, as well as his need to support his family while seeking vindication and reinstatement through legal action.

The board treated this employment as "voluntary military leave without pay" and excluded this period from the back pay obligation. The board relied on *In re Burroughs*, B–186963 (Comp.Gen., Mar. 4, 1977), for its ruling that Mr. Naekel is not entitled to back pay for this period. The government in its brief now acknowledges that *Burroughs v. Hampton*, No. 71–106–N (E.D.Va. July 18, 1977) overruled that Comptroller General's ruling. This district court decision, which was not pub-

lished in a reporter, was unearthed in the agency's file by Mr. Naekel in a Privacy Act action. It is curious indeed that the board relied on a decision that the agency knew had been reversed ten years earlier.

Mr. Naekel is entitled to inclusion of this entire period in the calculation of back pay.

### D. The Transition Period

■ The agency's notice of reinstatement, dated February 14, 1986, ordered Mr. Naekel to report for duty in Colorado on March 17, 1986. However, it took until May 31, 1986 for Mr. Naekel to complete the necessary arrangements, including giving notice to the Army Reserve and participating in an orderly transition of his Army position, selling his house in Kansas, making arrangements concerning his position and location (both of which were changed during this period, including reassignment from Colorado to Utah), and moving his family from Kansas to Utah. The government argues that the period after March 17 through May 31 must be excluded from the back pay calculation.

The agency, in correcting its wrongful personnel action, is required to act reasonably. It is not reasonable to penalize an employee, being reinstated after four and a half years of litigation, for giving reasonable notice to an interim employer and for making reasonable relocation arrangements. The record shows that Mr. Naekel acted expeditiously. The period through May 31, 1986 shall be included in the calculation of back pay.

### E. Mitigation

The board denied Mr. Naekel's request to deduct his job search and relocation expenses from his interim employment income, which is set off against the agency's back pay obligation. The government argues that "[n]either the [Back Pay Act] nor any other authority provides for the payment of compensatory damages or incidental expenses incurred by an employee as a consequence of an improper personnel action."

■ We are not here concerned with either compensatory damages or incidental expenses, but with the requirement that a wrongfully discharged employee make reasonable efforts to mitigate damages, i.e., make reasonable efforts to obtain interim employment, and with the calculation of the sum in mitigation. See Power at 263–65. Mr. Naekel was required to seek alternative employment, and it is undisputed that he did so diligently and eventually successfully. He was not required to work outside of his field of training, Ford Motor Co. v. Equal Employment Opportunity Commission, 458 U.S. 219, 231–32, 102 S.Ct. 3057, 3065, 73 L.Ed.2d 721 (1982), and he was not barred from relocating in order to work in his field, apparently at the only job he could get. He correctly states that the law does not require an employee to relocate in order to mitigate damages for wrongful discharge, see National Labor Relations Board v. Madison Currier, Inc., 472 F.2d 1307, 1319 (D.C.Cir.1972), or to make extraordinary efforts to find interim employment, Rasimas v. Michigan Department of Mental Health, 714 F.2d 614, 624–25 (6th Cir.1983), cert. denied, 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984), although in Mr. Naekel's case he did both.

The board erred in refusing to recognize Mr. Naekel's costs of obtaining interim employment. See, e.g., D. Dobbs, Handbook on the Law of Remedies § 12.6 (1973) (the avoidable consequences principle "justifies a recovery of reasonable expenses incurred in seeking to avoid such damages"); C. McCormick, Handbook on the Law of Damages § 163 (1935) ("The expense of seeking other employment is recoverable, in addition to loss of earnings, so far as it was reasonably incurred in the attempt to minimize damage"). The fact that it required extensive job-search efforts does not of itself make the cost of such efforts unreasonable. Consideration must be given to the extremity of Mr. Naekel's situation due to the circumstances of his wrongful discharge and the damaging personnel record.

Mr. Naekel is entitled to set off against his interim earnings his documented job search expenses and those relocation costs that are normally reimbursed to agency

employees transferred from one location to another, in this case from Kansas to Utah. In the event that the Army required reimbursement of the moving costs it paid for Mr. Naekel, those costs are also properly set off against the Army income.

### F. Interest

The board correctly held that it had no authority to award interest on back pay. *Naekel,* 32 M.S.P.R. at 494. *Frazier v. United States Postal Serv.,* 790 F.2d 873, 874 (Fed.Cir.1986); *United States v. Thayer–West Point Hotel Co.,* 329 U.S. 585, 588, 67 S.Ct. 398, 399, 91 L.Ed. 521 (1947). However, on December 22, 1987, 5 U.S.C. § 5596(b) was amended to provide for interest on back pay for federal employees. Act of Dec. 22, 1987, Pub.L. No. 100–202, 1988 U.S.Code Cong. & Admin.News (101 Stat.) 1329–430–31 (to be codified as 5 U.S.C. § 5596). The board's denial of interest is vacated. Upon remand the board shall apply this statute in accordance with its terms.

### G. Attorney Fees before the Board

Mr. Naekel had requested from the board recovery of attorney fees and expenses incurred in the action from which this appeal is taken. The board held that the request was premature, because compliance had not been completed. Upon remand all outstanding matters including the award of attorney fees under the Back Pay Act should be completed.

### H. Attorney Fees on this Appeal

With respect to this appeal, Mr. Naekel meets the statutory requirements for the award of fees and expenses under the Equal Access to Justice Act. *See* 28 U.S.C. § 2412(d)(1)(A) (Supp. III 1985); *Brewer v. American Battle Monuments Comm'n,* 814 F.2d 1564, 1566–67 (Fed.Cir.1987). An appropriate petition may be filed.

REVERSED IN PART, VACATED IN PART, AND REMANDED.

PAULINE NEWMAN, Circuit Judge, concurring in part, dissenting in part.

I join all aspects of the court's opinion except that of Part A, to which I respectfully dissent. I concur in the rationale of Part B, but because of my conclusion as to Part A, the calculation of Part B would of course be based on the required progression in grade.

As to the issues of grade and level, I believe that this case fully meets the standards of the Federal Personnel Manual and interpretive decisions, as discussed *infra,* requiring that Mr. Naekel's back pay and overtime be calculated at the grade progression set by the "Up or Out Policy" of FAA Form 3300–39 and the Training Agreement, also discussed *infra.*

The majority holds that Mr. Naekel's back pay shall be calculated at grade GS–9, including within-grade increases, for the entire four and one half year period between separation and reinstatement. The statute requires payment of back pay calculated as:

(i) an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period....

U.S.C. § 5596(b)(1)(A)(i) (1982).

The general rule is that reinstatement will be at the grade and level occupied by the employee at the time of the adverse action, absent special circumstances to justify any other practice; and thus the back pay calculation is normally at the grade at the time of the adverse action, in this case GS–9. Exceptions to this practice are required, however, when some provision of law mandates a promotion or "if it is clearly established by appropriate authority" that the employee would in fact have been promoted, whereupon the back pay is calculated accordingly. Federal Personnel Manual Supp. 990–2, Book 550, Subc. S8, p. 550–61 (1984); *Boese v. Department of the Air Force,* 784 F.2d 388, 390 (Fed.Cir.1986).

The circumstances here establish that Mr. Naekel would have been promoted, but for the unjustified removal. The Agree-

ment whereby the FAA employs air traffic controllers requires that the employee, as a condition of continued employment, progress through a training program on a fixed schedule of both achievement and grade: the so-called "Up or Out Policy", included in FAA Form 3300–39, "FAA Administrative Reassignment and Relocation Policy", which all entering controllers sign as a condition of employment. See also the agreement between the Federal Aviation Administration and the Office of Personnel Management, entitled "United States Office of Personnel Management Special Training Agreement," SSP:EDU 5–2 at 2 (approved Aug. 4, 1981), and Order 3330.-30C of the FAA, Employment Program for Developmental Air Traffic Control Specialists, ¶¶ 4–5 (Sept. 27, 1984).

The agency is required by statute to calculate back pay as if the employee had never been excluded. This is in accord with the Supreme Court's statement that:

> The general rule is, that when a wrong has been done, and the law gives a remedy, the compensation shall be equal to the injury. The latter is the standard by which the former is to be measured. The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed.

*Wicker v. Hoppock,* 73 U.S. (6 Wall.) 94, 99, 18 L.Ed. 752 (1867), *quoted in Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418–19, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975). Thus it must be presumed that Mr. Naekel would have gained the contractual progression, for he would have had no alternative as a continuing employee. As discussed in *Ciambelli v. United States,*

203 Ct.Cl. 680, 687 (1974), the Back Pay Act "entitles a wrongfully dismissed employee to the pay he 'normally would have earned' during the period the action was in effect and 'for all purposes, [he] is deemed to have performed services for the agency during that period.'" (quoting 5 U.S.C. § 5596). *See also Gunston v. United States,* 221 Ct.Cl. 57, 602 F.2d 316, 320 (1979) (back pay granted for within grade increases and promotions).

I would reverse the board's decision to limit Mr. Naekel's back pay to grade GS–9, and remand for recalculation of back pay and overtime measured at the grades and levels he would have occupied in the normal progression through the required program for air traffic controllers.

BISSELL, Circuit Judge, dissenting-in-part.

I respectfully dissent from Part B of the opinion. I would reverse the Board and apply the generalized overtime calculation approved by this court in *Spezzaferro v. FAA,* 807 F.2d 169, 171, 173–74 (Fed Cir. 1986). It is only proper that the formula for calculating back pay for FAA employees during the same time frame be consistently applied and not subject to the whim of the agency depending on which calculation will produce the least cost to the agency.